# EXHIBIT C



1 of 17 DOCUMENTS

D&S MARINE SERVICES, L.L.C., Plaintiff - Appellee v. LYLE PROPERTIES, L.L.C., Defendant -- Third Party Plaintiff -- Appellee -- Appellant v. LAWSON ENVIRONMENTAL SERVICE, L.L.C., Third Party Defendant - Appellant

No. 12-31263

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

2013 U.S. App. LEXIS 23229

November 18, 2013, Filed

**NOTICE:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [*1]
Appeals from the United States District Court for the Eastern District of Louisiana. USDC No. 2:11-CV-508. *D&S Marine Servs., LLC v. Lyle Props., LLC, 2012 U.S. Dist. LEXIS 167932 (E.D. La., Nov. 27, 2012)*

**COUNSEL:** For D&S MARINE SERVICES, L.L.C., Plaintiff - Cross-Appellee: William Daniel Wellons, Esq., Scott L. Sternberg, Baldwin Haspel Burke & Mayer, L.L.C., New Orleans, LA.

For LAWSON ENVIRONMENTAL SERVICE, L.L.C., Third Party Defendant - Appellant Cross-Appellee: Danna Elizabeth Schwab, Schwab Law Firm, Houma, LA.

For LYLE PROPERTIES, L.L.C., Third Party Plaintiff - Appellee Cross-Appellant: Gregory Engelsman, Bolen, Parker, Brenner, Lee & Engelsman, Ltd., Alexandria, LA.

**JUDGES:** Before STEWART, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

**OPINION**

PER CURIAM:*

* Pursuant to *5TH CIR. R. 47.5*, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in *5TH CIR. R. 47.5.4*.

In this contract dispute between Plaintiff D&S Marine Services, L.L.C. (D&S) and Defendant / Third-Party Plaintiff Lyle Properties, L.L.C. ("Lyle"), Lyle filed a third-party complaint against Third-Party Defendant Lawson Environmental Services, L.L.C. ("Lawson"), who Lyle claims is ultimately liable under the contract. The district court granted summary [*2] judgment against Lyle and in favor of D&S, and later found Lawson liable to Lyle in a bench trial. Lawson appeals the district court's: (1) denial of its motion to transfer for purposes of consolidation with the Deepwater Horizon Multidistrict litigation or, in the alternative, sever and stay the action between Lawson and Lyle; (2) failure to dismiss Lyle's claims as waived; and (3) grant of summary judgment in favor of D&S on damages. Lyle appeals the district court's grant of interest to D&S for the amount owed under the contract. We AFFIRM the judgment, but REVERSE the award of interest.

**FACTS AND PROCEEDINGS**

On July 11, 2010, Lawson entered into a Master Service Contract with British Petroleum Exploration and Production, Inc. ("BP") to assist with the clean-up from the Deepwater Horizon oil spill. On July 12, 2010, D&S leased the tugboat M/V Dustin D to Lyle. The D&S / Lyle contract was drafted by D&S's attorneys, and provided that Lyle would lease the tugboat from July 12, 2010 through January 12, 2010 (184 days) at a rate of $4,200/day.

Later on July 12, Lyle leased the same tugboat to Lawson at a rate of $4,800/day. Besides the increased rate, the Lyle / Lawson contract was identical [*3] to the D&S / Lyle contract. Both contracts leased the Dustin D for a term of 184 days and required 90 days written notice for termination. The contracts also provided that once a vessel is delivered, cancellation would not be effective until the specified term expired and the vessel was redelivered. The contracts further stated that any modifications could only be done in writing with the consent of both parties. Neither contract mentioned BP.

The Dustin D was immediately deployed for work. Sometime around October 2, 2010, BP terminated its contract with Lawson, ending Lawson's need for the Dustin D. Without written notice, Lawson terminated its contract with Lyle on October 2, 2010. On October 4, Lyle unilaterally returned the Dustin D to D&S, also without written notice or following the cancellation procedures. Following its return, D&S was able to find some alternative work for the Dustin D, and eventually sold the tugboat on December 12, 2010. No further invoices were sent to Lyle following the return of the Dustin D.

Three months later, D&S sent a letter to Lyle demanding payment for the remainder of the contract by February 18, 2011. The two parties met, but were unable to reach [*4] an agreement. D&S filed a complaint against Lyle in the Eastern District of Louisiana on March 3, 2011, seeking payment under the contract from October 4--the date the boat was returned in breach of the contract--through December 12--the date the boat was sold. Lyle answered and filed a third-party complaint against Lawson, alleging that Lawson was responsible for the breach of contract and seeking (1) indemnification from D&S and (2) payment of the additional daily rate Lyle would have collected during the same time period.

D&S moved for partial summary judgment against Lyle on the issue of liability under the contract. Lyle did not oppose the motion, and summary judgment on liability was granted in favor of D&S. D&S then sought summary judgment on damages, which Lyle opposed on the grounds that it would be impossible to determine the actual loss as a matter of law. The district court granted D&S's motion and awarded damages against Lyle in the amount of $247,674.40, plus 1.5% monthly interest.

While D&S's motion on damages was pending, Lawson filed a "Motion to Transfer for the Purpose of Eventual Consolidation" with the Deepwater Horizon Multidistrict Litigation (2:10-md-02179) or, in [*5] the alternative, "Motion to Sever and Stay" Lyle's claim against Lawson until the resolution of the Deepwater Horizon MDL. The district court denied those motions. Following the district court's grant of summary judgment on damages in favor of D&S, both Lyle and Lawson filed for summary judgment in their third-party dispute. These motions were denied, and the case proceeded to trial, where the district court awarded Lyle $310,674.40, without interest. It also entered a $247,674.40, plus 1.5% monthly interest, judgment against Lyle and in favor of D&S to satisfy its earlier summary judgment award.

Lawson timely appealed, arguing that the district court: (1) abused its discretion in failing to transfer or stay; (2) erred by failing to dismiss Lyle's claims as waived under the terms of the charter agreement; and (3) erred in granting summary judgment on contractual damages. Lyle cross-appealed, claiming that D&S was not entitled to 1.5% monthly interest under the charter.

D&S responded, arguing: (1) that Lawson lacks standing to challenge the district court's grant of summary judgment between D&S and Lyle; (2) the district court correctly denied Lawson's motion to transfer; and (3) that [*6] the district court correctly found against Lyle on summary judgment for damages.

## STANDARD OF REVIEW

This court will reverse a denial of a *28 U.S.C. § 1404(a)* motion to transfer venue if the district court failed to correctly construe and apply the relevant statute, or to consider the relevant factors incident to ruling upon the motion, or otherwise abused its discretion in deciding the motion. *Castanho v. Jackson Marine, Inc., 650 F.2d 546, 550 (5th Cir. Unit A June 1981)*. We review all questions concerning venue under the abuse of discretion standard. *United States v. Asibor, 109 F.3d 1023, 1037 (5th Cir. 1997)*.

We review the district court's denial of a motion for severance for abuse of discretion. *United States v. Stouffer, 986 F.2d 916, 924 (5th Cir. 1993)*. "A district court's decision to stay a proceeding is generally reviewed for abuse of discretion." *Kelly Inv., Inc. v. Cont'l Common Corp., 315 F.3d 494, 497 (5th Cir. 2002)* (internal citation omitted). "However, to the extent that such a decision rests on an interpretation of law, the review is de novo." *Id.*

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. *In re Settoon Towing, L.L.C., 720 F.3d 268, 275 (5th Cir. 2013)*. [*7] Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. We must view all facts and evidence in the light most favorable to the non-moving party when considering a motion for summary judgment. *Dameware Dev., L.L.C. v. Am. Gen. Life Ins. Co., 688 F.3d 203, 206-07 (5th Cir. 2012)*.

## DISCUSSION

### I. Lawson's Motion to Transfer for Purposes of Consolidation with the Deepwater Horizon MDL

Lawson's complaint is unclear on whether his motion to transfer was brought under *28 U.S.C. § 1407*--governing multidistrict litigation--or as a simple motion to transfer venue under *28 U.S.C. § 1404*. We will address both alternatives.

Motions to consolidate and transfer actions as part of a multidistrict litigation ("MDL") are governed by *28 U.S.C. § 1407*, which provides that "[s]uch transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." A transfer may be initiated [*8] in one of two ways: (1) the judicial panel on multidistrict litigation may transfer an action of its own initiative; or (2) a party may file a motion to transfer and consolidate with the judicial panel on multidistrict litigation. *28 U.S.C. § 1407(c)*. The same rules apply if a party wishes to consolidate its case as a "tag-along action" to a pre-existing MDL. *See JPML Rule 1.1(h)* ("'Tag-along action' refers to a civil action pending in a district court which involves common questions of fact with either (1) actions on a pending motion to transfer to create an MDL or (2) actions previously transferred to an existing MDL, and which the Panel would consider transferring under *Section 1407*.").

Lawson's motion to transfer this action for purposes of consolidation with the Deepwater Horizon MDL was not filed with the judicial panel on multidistrict litigation; it was filed in the Eastern District of Louisiana, which lacks the authority to consolidate the case. *See Holmes v. Grubman, 315 F. Supp. 2d 1376, 1380 (M.D. Ga. 2004)* ("Finally, the Court notes its inability and lack of authority to transfer this action to the Southern District of New York. Pursuant to *§ 1407*, either a party must move [*9] the Panel or the Panel itself must initiate a motion to transfer, which the Panel then must grant before transfer and consolidation occurs."). Because the district court lacked authority to transfer the case to the MDL, its decision not to transfer the case was not an abuse of discretion.

Regarding the district court's alleged failure to transfer venue under *§ 1404*, we observe that this action and the Deepwater Horizon MDL are both being heard in the Eastern District of Louisiana--which has only one division. As there was no other division to which this case could be transferred, the district court cannot have abused its discretion in failing to do so.

Lawson appears to be arguing that this case should have been "transferred" to the Deepwater Horizon MDL, stating "the district court abused its discretion in denying Lawson's motion to transfer this matter to 2:10-md-02179 [the Deepwater Horizon MDL] for purposes of eventual consolidation." Lawson Br. 21. That is not a transfer of venue. It is a consolidation which, as discussed, the district court lacked authority to order.

### II. Lawson's Motion to Sever and Stay Proceedings

Lawson argues that Lyle's third-party claim should have been severed [*10] and stayed pending the resolution of issues regarding BP's responsibility in the Deepwater Horizon MDL. Although district courts have inherent authority to control their dockets, "only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co., 299 U.S. 248, 255, 57 S. Ct. 163, 81 L. Ed. 153 (1936)*. "Whether such a circumstance exists depends on a balance between the harm of moving forward and the harm of holding back." *Ali v. Quarterman, 607 F.3d 1046, 1049 (5th Cir. 2010)*

In support of a stay, Lawson argues that D&S and Lyle's claims are "indistinguishable from those of other vessel charter claimants" that were stayed as part of the MDL. Lawson further argues that these claims were resolved as part of the MDL's Economic and Property Damage Claims settlement ("Settlement"), which names Lawson as a released party and includes D&S and Lyle as "members of the certified class." *See* 2:10-md-02179, Doc. 6430-1, §§ 1.2.3 & 1.3.1.2; 2:10-md-02179, Doc. 8139 at 3; 2:10-md-02179 Doc. 6430-38, Ex. 20 at 2.

Lawson's argument can be interpreted in two ways, both of which are without merit. First, [*11] while Section 1.2.3 of the Settlement certainly includes D&S and Lyle as entities that "operated a vessel in the Gulf Coast Area" at the time of the spill, those entities are only entitled to claims under the "Economic Damages Category." 2:10-md-02179, Doc. 6430-1, §§ 1.2.3 & 1.3.1.2. Economic Damages only apply to "[l]oss of income, earnings or profits suffered . . . as a result of the DEEPWATER HORIZON INCIDENT," defined as "the events, actions, inactions and omissions leading up to and including" the Deepwater Horizon explosion and "RESPONSE ACTIVITIES, including the VoO [Vessel of Opportunity] Program." *Id.* at § 38.43. Neither D&S nor Lyle--as related to this action--claim that their businesses lost income or profits because of the explosion or response activities. Their claims are based upon a subsequent breach of contract, not the Deepwater Horizon Incident.

This would appear to place D&S and Lyle in the second category of covered plaintiffs: VoO Charter claimants. These claimants are defined as those who "registered to participate in BP's Vessel's of Opportunity ("VoO") program and executed a VoO MASTER VESSEL CHARTER AGREEMENT with BP, Lawson . . . or any other BP subcontractor [*12] as CHARTERER, and completed the initial VoO training program." Doc. 6430-1, § 1.3.1.4. But while Lyle contracted with Lawson, and D&S may be a subcontractor of Lyle, there is no evidence that either "completed the initial VoO training program." Further, the contract governing the relationships between D&S, Lyle, and Lawson was drafted by D&S, not BP. Neither D&S nor Lyle ever signed the "VoO Master Vessel Charter Agreement," which is defined as "the standard agreements utilized by BP and its agents or subcontractors to charter the vessels available for work or service in connection with the VoO program." Doc. 6430-1, § 38.165. Consequently, they are not VoO Charter claimants. *See* § 38.173 (defining "Working VoO Participant" as "a vessel owner who executed a VoO Master Vessel Charter Agreement, completed the initial VoO training program, and was dispatched or placed on-hire . . . by a Charterer.).

Because neither D&S nor Lyle are class members under the Settlement, there is no harm in adjudicating their claims against each other, and Lyle's claim against Lawson, independent from the MDL. And since Lyle's claim against Lawson is unrelated to the MDL, and arises out of the same contract [*13] as D&S's case against Lyle, the district court did not abuse its discretion in denying Lawson's motion to sever or in denying Lawson's motion to stay.

### III. Lyle's Alleged Waiver of Any Remedy for Breach of Contract

Lawson contends that its contract with Lyle contains "mutual, 'exculpatory clauses'" which "relieve each party . . . from any consequences for any breach" of the charter agreement. In support, Lawson cites section XV, ¶ 3 of the charter agreement, which provides:

> *Notwithstanding anything to the contrary contained herein, it is expressly agreed by and between the parties hereto that*, regardless of the negligence on the part of any party hereto or the unseaworthiness, (existing or not) of any vessel, *or any charter breach,* CHARTERER [Lawson] *waives and releases any and all rights against the vessel indemnities, and* OWNER [D&S] *and the owners and/or operators of brokered vessels waive and release any and all rights against the* CHARTERER *Indemnities* [Lawson] *for any punitive, indirect, incidental, special or consequential damages of any kind or nature (including, but not limited to, loss of profits, loss of use, loss of hire or loss of production).*

(emphasis added).

Lawson argues [*14] that the district court erred in failing to honor the parties' clear and unambiguous intent to waive all liability for any breach of the charter. This interpretation is erroneous. Section XV indemnifies both parties against specific types of damages, namely "punitive, indirect, incidental, special or consequential damages of any kind or nature (including, but not limited to, loss of profits, loss of use, loss of hire or loss of production)." It does not indemnify the parties against normal expectation damages, and consequently does not bar this claim. The district court did not err in failing to dismiss Lyle's claims for breach of charter as waived.

### IV. Summary Judgment on Contract Damages

Lawson's final argument is that the district court erred in awarding D&S the entire amount of the contract for charter hire, less deductions, rather than placing "D&S in the position it would have been had the charter not been breached." Lawson Br. 33. D&S argues that Lawson lacks standing to challenge this judgment.

As a general rule, a party "may not appeal a district court's order to champion the rights of another, and even an indirect financial stake in another party's claims is insufficient to [*15] create standing on appeal." *Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc., 32 F.3d 205, 208 (5th Cir. 1994)* (internal quotation marks omitted). Lawson attempts to challenge the district court's grant of summary judgment in favor of D&S--and against Lyle--on the issue of damages. It argues that it was prejudiced by this "manifest error of law" because it was held liable for D&S's damages in the subsequent bench trial against Lyle. That is not what happened. At the bench trial, the district court made a number of factual findings--listed under the heading "Findings of Fact"--some of which resolved questions of damages. Of the findings on damages, the district court determined that Lawson was liable to Lyle for the daily rate of the charter ($4,800) times the number of days in the contract (184), or $883,200. The district court found that the Dustin D was sold for $110,400, and deducted that from Lawson's liability. It then found--as a finding of fact--that D&S [*16] mitigated Lyle's damages in the amount of $121,925.60, decreasing Lawson's liability to Lyle by the same amount. Finally, it found that Lawson had al-

ready paid Lyle $340,200, reducing Lawson's final liability to $310,674.40.

Each of these individual calculations was determined as a question of fact at the bench trial. Whatever the merits of those determinations, Lyle's liability to D&S was not "baked in" to Lawson's calculation. Lawson's liability was determined at the contractually defined rate of $4,800/day. To the extent Lawson wanted to claim that D&S had mitigated the damages to a greater degree than found by the district court, it was free to do that at trial. D&S's damages were listed as "Findings of Fact," and Lawson does not argue that it was collaterally estopped from relitigating those facts. Absent any relation between how damages were determined in D&S's motion for summary judgment and Lawson's bench trial, Lawson has no appealable interest in the district court's grant of summary judgment in favor of D&S on damages, and lacks standing to challenge that disposition. As neither Lyle nor D&S challenge the award of damages on appeal--Lyle appeals only the interest on that award--we [*17] have no basis to review the district court's ruling of partial summary judgment in favor of D&S on damages.

**V. Is D&S entitled to statutory interest and, if so, should Lyle receive the same interest?**

Lyle appeals the district court's determination that D&S was entitled to 1.5% monthly interest on the total amount owed under the charter. D&S argues that section IV of the charter, which states that "CHARTERER shall pay one and one-half percent (1 1/2%) interest per month on all receivables due and payable to OWNER in arrears ten (10) days or more after the date of OWNER's invoices" entitles it to 1.5% monthly interest on the judgment from February 18, 2011 [1]--the date that D&S made its demand for payment--until present. This argument ignores the requirement of that same section that "OWNER shall bill CHARTERER at 2108 Denley Rd., Houma, LA 70363, every fifteen days" and interest is due on payments that are "in arrears ten (10) days or more after the date of the OWNER's invoices." D&S did not invoice Lyle as required under the contract. Further, section IV also provides: "Should CHARTERER contest the amount of any invoice, it shall, within twenty (20) days from invoice receipt, notify OWNER [*18] of the contested amount and specify the reason(s) therefor, whereupon payment of the contested amount will be suspended until settlement of the dispute." Although the exact timing of Lyle's objection is unclear, the record discloses that D&S filed suit on March 3, 2011--13 days after the date payment was demanded--and had a meeting with D&S at some unknown point before this suit was filed. It is clear that Lyle notified D&S of its objection to the letter, rendering "payment of the contested amount . . . suspended until settlement of the dispute." Consequently, the district court erred in granting D&S 1.5% monthly interest on its damages, as they were not "receivables and payables due" under the contract.

1  D&S, citing Rec. Ex. 000027-000028 (Rec. Doc. 32-5), claims that payment was demanded on January 18, 2011. However, the document found at that citation is a letter to Lyle dated February 9, 2011 and demanding payment by February 18, 2011. Our analysis credits the demand date documented in the February 9 letter.

**CONCLUSION**

The judgment of the district court is AFFIRMED on all matters except its grant of 1.5% interest to D&S Marine Services, L.L.C. That portion of the decision is REVERSED [*19] and REMANDED for entry of judgment in accordance with the district court's grant of summary judgment, but without 1.5% monthly interest.