IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JIM HOOD, ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI, *ex rel.*
THE STATE OF MISSISSIPPI                                        PLAINTIFF


VS.               (LEAD CASE) CIVIL ACTION NO. 3:12-cv-565-WHB-LRA

                                              CONSOLIDATED WITH

                                      CIVIL ACTION NO. 3:12-cv-575


CAPITAL ONE BANK (USA) N.A., and
CAPITAL ONE SERVICES, LLC                            DEFENDANTS[1]


OPINION AND ORDER

This cause is before the Court on the Motion for Decision on
Substantial Federal Question.  The Motion asks whether the Court
can properly exercise federal question jurisdiction in this case
based on the presence of a substantial federal question.  Having
considered the pleadings, the attachments thereto, as well as
supporting and opposing authorities, the Court finds it cannot.
Accordingly, this case will be remanded to state court.

---

[1]  This consolidated action was originally comprised of the
following six lawsuits:  Hood, *ex rel.* Mississippi v. JPMorgan
Chase & Co. *et al.*, Civil Action No. 3:12-cv-565; Hood, *ex rel.*
Mississippi v. HSBC Bank Nevada, N.A., *et al.*, Civil Action No.
Civil Action No. 3:12-cv-571; Hood, *ex rel.* Mississippi v.
Citigroup Inc., *et al.*, Civil Action No. 3:12-cv-572; Hood, *ex
rel.* Mississippi v. Discover Financial Services, Inc., *et al.*,
Civil Action No. 3:12-cv-573; Hood, *ex rel.* Mississippi v. Bank
of America Corporation, *et al.*, Civil Action No. 3:12-cv-574; and
Hood, *ex rel.* Mississippi v. Capital One Bank (USA) N.A. and
Capital One Services, LLC., Civil Action No. 3:12-cv-575.  The
cases were consolidated for the purpose of deciding the issues
related to remand.  In the intervening period, Civil Action Nos.
565, 571, 572, 573 and 574 have all been dismissed by Agreed
Order thereby leaving only Civil Action No. 575 in this case.

## I.  Factual Background and Procedural History

The State of Mississippi, by and through its Attorney General, Jim Hood ("Hood"), filed a lawsuit against Capital One Bank (USA) N.A. and Capital One Services, LLC (collectively, "Capital One") in the Chancery Court for the First Judicial District of Hinds County, Mississippi "to protect citizen consumers of Mississippi".  The lawsuit is predicated on the following allegations:

> These actions stem from the Defendants' marketing, selling, and administering to Mississippi consumers fee-based products, which are ancillary to their credit cards.

> Defendants market such ancillary products as protection for consumers against improper or unauthorized charges on their credit cards, identity theft, and lost or stolen credit cards and/or as providing benefits in the event of unemployment or disability.  Each ancillary product is marketed only to the Defendants' current card holders, and the products themselves are attached to the cardholders' specific account at issue.

> Upon information and belief, when consumers apply for and receive Defendants' credit cards, a process is triggered whereby a consumer can unknowingly and unintentionally sign up to receive ancillary products.

> Additionally, Defendants often enroll consumers in these products even though the consumers did not assent to pay for them.  This process is referred to as "slamming." Enrollment may be based on highly deceptive and misleading telemarketing calls, forged or non-existent mailers or online applications, or nothing at all.  In each instance, unknowing consumers are hit with monthly fees without their meaningful consent or understanding that their credit card will be charged for these products.  Defendants are in a position to do this because, unlike a typical marketer or seller, they are already the consumer's credit card company and already have their credit card number.

> Further, for certain types of ancillary products ... that all offer similar coverage (hereinafter collectively referred to as "Payment Protection Plans" or "Plans"), that purport to pay the consumer's required minimum monthly payment for a limited period of time under certain triggering circumstances, such as involuntary unemployment, illness, or changes in family status, thus

preventing the account from becoming delinquent, Defendants make no effort to determine whether consumers are even eligible for the benefits at the time of sale. As a consequence, Defendants bill ineligible Mississippi citizens for this coverage, even though their status at the time of enrollment prevents them from receiving benefits under the terms of these Payment Protection Plans.

The Defendants commit unfair and deceptive business practices and violate statutory and common law by charging consumers for ancillary products, including Payment Protection Plans, who either did not want them or were not entitled to benefit from them, and by the unfair and deceptive manner in which Defendants offer and administer claims for benefits by consumers.

As a result of these unfair and deceptive practices, Defendants have amassed substantial sums of money with virtually no benefits to Mississippi citizens who are nevertheless charged for these products month in and month out.

See Capital One Action Am. Compl., ¶¶ 1-7.  The State further alleges that "[b]y marketing, selling, and administering the [Payment Protection Plans, Capital One] has ... engaged in conduct which constitutes an unfair method of competition and/or a deceptive trade practice in violation of the Mississippi Consumer Protection Act [("MCPA")]", codified at MISS. CODE ANN. § 75-24-1, *et seq.* See id. at ¶¶ 73.  Through its Amended Complaint, the State of Mississippi seeks the following: (1) injunctive relief barring Capital One from engaging in unfair or deceptive practices that violate the MCPA;[2] (2) a monetary judgment "for disgorgement and

---

[2] Under the MCPA: "Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5, and that proceedings would be in the public interest, he may bring an action in the name of the state against such person to restrain by temporary or permanent injunction the use of such method, act or practice..."  MISS. CODE ANN. § 75-24-9.

restitution of monies acquired by [Capital One] by means of any practice prohibited by the MCPA";[3] (3) a declaration that the alleged acts of [Capital One] constitute multiple violations[4] of the MCPA, and civil penalties for each alleged violation;[5] and (4) attorneys fees and costs as permitted under the MCPA as well as pre- and post-judgment interest.

The lawsuit was removed on a claim that the Court could properly exercise diversity-based federal subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d), because the lawsuit was a class action and/or a mass action under the terms of that Act. Removal was also predicated on a claim that the Court could properly exercise

---

[3] Under the MCPA: "The court may make such additional orders or judgments, including restitution, as may be necessary to restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any practice prohibited by this chapter ..."  MISS. CODE ANN. § 75-24-11.

[4] According to Hood, each of the following constitutes a separate violation of the MCPA: (1) enrolling a consumer in a Payment Protection Plan without his or her consent; (2) enrolling a consumer in a Payment Protection Plan who was ineligible for benefits under the Plan due to age, work status, disability, etc.; (3) enrolling a consumer in a Payment Protection Plan without disclosing all of the Plan's material restrictions, limitations, and exclusions; and (4) failing to refund any premium that was paid for a Payment Protection Plan.  See e.g. Chase Action, Am. Compl. at ¶ 75.

[5] Under the MCPA: "In any action brought under Section 75-24-9, if the court finds from clear and convincing evidence, that a person knowingly and willfully used any unfair or deceptive trade practice, method or act prohibited by Section 75-24-5, the Attorney General, upon petition to the court, may recover on behalf of the state a civil penalty in a sum not to exceed Ten Thousand Dollars ($10,000.00) per violation...."  MISS. CODE ANN. § 75-24-19(1)(b).

federal question subject matter jurisdiction because the state law claims alleged in the lawsuit were either (1) completely pre-empted under the National Bank Act ("NBA"), codified at 12 U.S.C. §§ 85-86, or the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), codified at 12 U.S.C. § 1331(d); or (2) raised a substantial federal question that must be resolved in accordance with the NBA.

The Court previously denied remand upon finding it could properly exercise diversity jurisdiction under the mass action provision of the CAFA and/or it could properly exercise federal question jurisdiction because some of the alleged claims were preempted under the NBA.   <u>See</u> Opinion and Order [Docket No. 44]. An appeal was taken, and the United States Court of Appeals for the Fifth Circuit reversed.   <u>See</u> <u>Hood ex rel. Mississippi v. JP Morgan Chase & Co.</u>, 737 F.3d 78 (5th Cir. 2013).   The Court now takes up the remaining issue relating to jurisdiction, namely whether the Court can properly exercise federal question jurisdiction based on the presence of a substantial federal question.


## II.  Discussion

A federal question, for the purpose of conferring federal subject matter jurisdiction under 28 U.S.C. § 1331, exists "only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."   <u>Singh v. Duane Morris LLP</u>,

5

538 F.3d 334, 337-38 (5th Cir. 2008).  As regards the latter ground, it is well settled that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." <u>Merrell Dow Pharms. Inc. v. Thompson</u>, 478 U.S. 804, 813 (1986)(citing <u>Franchise Tax Bd. of Ca. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1 (1983)).  Similarly, "the presence of a disputed federal issue ... [is] never necessarily dispositive." <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314 (2005).  Instead, the issue of whether a claim that "finds its origins in state rather than federal law" is within the "special and small category of cases in which arising under jurisdiction still lies", is decided using the following inquiry:

> Does the state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?  That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.  Where all four of these requirements are met, ... jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

<u>Gunn v. Minton</u>, --- U.S. ---, 133 S.Ct. 1059, 1064-64 (2013) (internal citations omitted). <u>See also Singh</u>, 538 F.3d at 338 (explaining that a state law claim raises a federal issue for the purpose of conferring federal question jurisdiction only in those

cases in which "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.").

Capital One argues that substantial federal questions are raised in the Amended Complaint because that pleading alleges violations of federal law.  Specifically, Capital One cites to 12 C.F.R. § 37.1, which provides, in relevant part:

> (a) A national bank is authorized to enter into debt cancellation contracts and debt suspension agreements and charge a fee therefor, in connection with extensions of credit that it makes ...
>
> (b) This part sets forth the standards that apply to debt cancellation contracts and debt suspension agreements entered into by national banks. The purpose of these standards is to ensure that national banks offer and implement such contracts and agreements consistent with safe and sound banking practices, and subject to appropriate consumer protections.
>
> (c) This part applies to debt cancellation contracts and debt suspension agreements entered into by national banks in connection with extensions of credit they make. National banks' debt cancellation contracts and debt suspension agreements are governed by this part and applicable Federal law and regulations, and not by part 14 of this chapter or by State law.

12 C.F.R. § 37.1.  In response, the State of Mississippi argues that no violations of federal law are alleged in the Amended Complaint.  The State additionally argues that while, at best, Section 37.1 may serve to establish a federal preemption defense, such defense cannot be used as a basis for exercising federal question jurisdiction.  After reviewing the Amended Complaint and

7

applicable authorities, the Court finds Capital One has failed to show that the federal issues that may exist in this case are substantial.

On the issue of substantiality, courts have recognized that "there is no bright-line rule regarding whether a state-law claim presents a 'substantial' federal question." Marren v. Stout, 930 F.Supp.2d 675, 683 (W.D. Tex. 2013). The United States Supreme Court has, however, identified a number of factors that weigh in favor of such a finding. The factors are whether "(1) the case presents a nearly pure issue of law that would control many other cases rather than an issue that is fact-bound and situation-specific; (2) the federal government has an important interest in the issue, particularly if the case implicates a federal agency's ability to vindicate its rights in a federal forum; and (3) a determination of the federal question will be dispositive of the case." Marren, 930 F. Supp. 2d at 683 (citing Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 700-01 (2006)) (alterations in original). The Court finds none of these factors are satisfied.

First, there has been no showing that this case either presents a nearly pure issue of law or would be controlling in many other cases. Here, the Court is not being asked to define or interpret, as a matter of law, the meaning or applicability of any of the federal regulations issued by the Office of the Comptroller of the Currency ("OCC"). Instead, the Court is being called upon to consider whether the disclosures and marketing tools/techniques

8

used by Capital One complied with those regulations.  As such, the
Court finds the issue of OCC federal regulation compliance
presented in this case is "fact-bound" and "situation-specific"
and, therefore, cannot be considered substantial for the purpose of
conferring federal question jurisdiction.  <u>See</u> <u>e.g.</u> <u>Empire</u>
<u>Healthchoice</u>, 547 U.S. at 308 (finding substantial question
jurisdiction did not exist in a case in which the federal issue to
be decided was "fact-bound and situation-specific"); <u>Singh</u>, 538
F.3d at 339 (finding substantial question jurisdiction did not
exist in a case in which the federal issue to be decided was
"predominantly one of fact").

Second, there has been no showing that the federal government
has any interest in the OCC federal regulation compliance issues
raised in the Amended Complaint, or is otherwise trying to
vindicate its rights in this litigation.  Finally, the Court finds
the determination of the OCC federal regulation compliance issue
may not be dispositive in this case because, even if Capital One
were successful in proving it had fully complied with the subject
regulations, the State of Mississippi could nevertheless recover on
its state law claims based on the alternate theories of liability
alleged in the Amended Complaint.  For example, the State alleges
that, in addition to engaging in deceptive advertising and
marketing with respect to Payment Protection Plans, Capital One
also engaged in unfair and deceptive activities with respect to the
manner in which claims for benefits under the Plans are filed and
administered.  <u>See</u> Am. Compl., ¶¶ 6, 63.  The State further alleges

that Capital One engaged in unfair and deceptive activities with respect to the cancelling of Payment Protection Plans, and by failing to remove/continuing to charge consumers for such Plans even after determining that the consumer was ineligible for benefits thereunder. Id. at ¶¶ 63, 66. It has not been shown that the areas of claims administration and plan cancellation based on ineligibility are governed by Section 37.

In sum, the Court finds Capital One has failed to satisfy its burden to show that the OCC federal regulation compliance issues in this case would be considered "substantial" under controlling precedent. Accordingly, the Court finds Capital One has failed to show that a substantial federal question exists and, therefore, has failed to show that the Court could properly exercise federal subject matter jurisdiction under 28 U.S.C. § 1331. Based on these findings, this case will be remanded to state court.

## IV.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Motion for Decision on Substantial Federal Question [Docket No. 55] is hereby granted, to the extent that issue has now been decided, and the Court has found that a substantial federal question for the purpose of conferring federal subject matter jurisdiction under 28 U.S.C. § 1331 is not present in this case. The Motion is denied, as moot, to the extent it requested a stay pending a decision by the United States Supreme Court in Mississippi v. AU Optronics Corp. as that case has now

10

been decided.

IT IS FURTHER ORDERED that the Clerk of Court is directed to file a copy of this Opinion and Order in both Civil Action No. 3:12-cv-565 and Civil Action No. 3:12-cv-575.


IT IS FURTHER ORDERED that the Clerk of Court is directed to remand Civil Action No. 3:12-cv-575 to the Chancery Court for the First Judicial District of Hinds County, Mississippi.

IT IS FURTHER ORDERED that the Clerk of Court is to close Civil Action No. 3:12-cv-565 based on the Agreed Order of Dismissal entered in that case [Docket No. 69].

SO ORDERED this the 30th day of September, 2014.


                              s/ William H. Barbour, Jr.
                              UNITED STATES DISTRICT JUDGE